**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| KIRK THOMAS,<br>          Appellant, | DOCKET NUMBER<br>DA-0432-13-0109-I-1 |
|          v. | |
| DEPARTMENT OF JUSTICE,<br>          Agency. | DATE: December 10, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kevin Curtis Crayon, II, Kennesaw, Georgia, for the appellant.

Evan Harry Perlman, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's action removing him under 5 U.S.C. chapter 43. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The agency placed the appellant on a performance improvement plan (PIP) on April 25, 2011, because it determined that his performance in Critical Element 1 (CE1) of the performance plan for his GS-13 Human Resources (HR) Officer position was unacceptable. Initial Appeal File (IAF), Tab 22 at 17-22. To perform at the successful level[2] under CE1, the appellant was required to: (1) timely provide accurate, thoroughly researched, clear and succinct management advice and technical services, which demonstrated support of management goals and was responsive to management needs; and (2) communicate effectively orally and in writing regarding, and timely inform management officials about, management advisory issues. *See id.* at 9.

¶3 On September 12, 2011, the agency notified the appellant that he passed the PIP but that it would take action to reassign, demote, or remove him if his performance in CE1 again fell below the acceptable level within 1 year of the beginning of the PIP. *Id.* at 24-26. The agency proposed his removal under

---

[2] The performance plan included three rating levels: unacceptable, successful, and outstanding. IAF, Tab 22 at 6.

5 U.S.C. chapter 43 on December 8, 2011, finding that his performance in CE1 had fallen again to an unacceptable level. IAF, Tab 21 at 156-65.

¶4     The proposed action stemmed from four assignments e-mailed to the appellant on September 28, 2011. First, in the morning, an HR Specialist from another office e-mailed the appellant requesting clarification as to several suspected Annual Pay Review (APR) errors. *Id.* at 162; IAF, Tab 22 at 169-70. As a result of this e-mail, it was discovered that seven APR forms, which the appellant had been responsible for ensuring contained correct pay and award information when he signed them in June and July 2011, contained errors. *See* IAF, Tab 21 at 162-63, Tab 22 at 172-78. The appellant did not identify the errors to his supervisor until September 30, 2011. *See* IAF, Tab 21 at 162. Further, one of the forms contained a pay setting error that resulted in an employee's pay increase not being timely implemented. *See id.* at 163. The appellant was unable to respond to management inquiries as to whether the employee at issue was entitled to receive retroactive payment and failed to conduct research in order to provide a response. *See id.* The pay-setting error ultimately caused a budget shortfall for the 2011 fiscal year and also required agency management to recalculate its budget for the 2012 fiscal year due to the unexpected increase to salary costs. *See id.*

¶5     Second, that afternoon, the appellant's supervisor requested that he review and update an employee listing by noon on September 30, 2011. *Id.* at 157-58; IAF, Tab 22 at 34. The e-mail was sent with high importance and listed the deadline in the subject line. IAF, Tab 21 at 158, Tab 22 at 34. On September 30, 2011, when his supervisor inquired shortly before noon as to the status of the assignment, the appellant seemed unaware of it and indicated that he must not have read the e-mail. IAF, Tab 21 at 158, Tab 22 at 38. The appellant then assigned the task to a subordinate employee but, because he failed to properly relay the instructions set forth in the e-mail, his subordinate did not correctly complete it. IAF, Tab 21 at 158, Tab 22 at 38. Specifically, his subordinate

turned in a hard copy with handwritten edits, although the e-mailed instructions indicated that the changes should be made in Microsoft Word. IAF, Tab 21 at 158, Tab 22 at 38.

¶6    Third, also in the afternoon, the appellant's supervisor asked him to determine whether there was a minimum amount of time which an employee could use from a time-off award. IAF, Tab 21 at 161, Tab 22 at 99. The e-mail did not include a deadline, and the appellant failed to respond, so his supervisor e-mailed him on September 29, 2011, indicating that she needed a response that day. IAF, Tab 21 at 161, Tab 22 at 99. On October 7, 2011, and October 12, 2011, the appellant's supervisor sent him follow-up inquiries, as he had yet to respond. IAF, Tab 21 at 161, Tab 22 at 85, 88. The appellant responded on October 13, 2011, but his supervisor concluded that the information he provided was unclear and incomplete. IAF, Tab 21 at 161-62, Tab 22 at 101.

¶7    Fourth, in the evening, the appellant's supervisor asked him to edit several draft organizational charts by October 5, 2011. IAF, Tab 21 at 159, Tab 22 at 46. The appellant failed to complete the assignment by October 5, 2011. IAF, Tab 21 at 159, Tab 22 at 58.

¶8    On October 6, 2011, the appellant's supervisor advised him that one of the organizational charts he had been assigned to edit needed to be submitted to another office by October 7, 2011. IAF, Tab 21 at 159, Tab 22 at 82. The appellant's subordinate e-mailed the document to the appellant's supervisor on October 6, 2011, but the chart did not include the changes the appellant's supervisor had requested in the September 28, 2011 e-mail. IAF, Tab 21 at 159, Tab 22 at 82. The appellant's supervisor e-mailed him to inform him of this issue, and he provided a corrected version later that day, explaining that he was unaware that she had sent an e-mail requesting specific changes and that he had not yet completed the other charts because he was "still working through emails" from the previous week. IAF, Tab 21 at 160, Tab 22 at 82.

¶9    As to the remaining organizational charts, which the appellant failed to submit by October 5, 2011, his supervisor granted him an extension until October 11, 2011.  IAF, Tab 21 at 160, Tab 22 at 88.  The appellant failed to submit the charts by the extended deadline.  IAF, Tab 21 at 160, Tab 22 at 89.  When he did submit them on October 12, 2011, in response to his supervisor's inquiry as to the status, they contained numerous errors.  IAF, Tab 21 at 160-61, Tab 22 at 88.  The assignment was not finally completed until October 13, 2011.  IAF, Tab 21 at 161, Tab 22 at 101.

¶10    The agency's removal action became effective on January 26, 2012.  IAF, Tab 21 at 133, 135-39.  The appellant subsequently timely[3] filed an appeal with the Board regarding his removal and requested a hearing.  IAF, Tab 1.  He disputed that his performance in CE1 following the PIP was unacceptable as a whole, and also asserted that the agency: (1) did not provide him with an adequate opportunity to improve; (2) improperly relied on a 2-week time period to justify his removal;[4] and (3) failed to consider extenuating circumstances that explained some of the alleged performance deficiencies.  *Id.*  He raised affirmative defenses of sex and race discrimination, disability discrimination based on a failure to accommodate, as well as reprisal for engaging in EEO activity.  *Id.*  He also alleged that the agency violated his due process rights by

---

[3] The appellant first filed a formal equal employment opportunity (EEO) complaint.  IAF, Tab 8 at 46-51.  The agency issued its final agency decision in that matter on November 2, 2012.  IAF, Tab 7 at 7-8.  The appellant's appeal was therefore timely filed under 5 C.F.R. § 1201.154.

[4] On review, citing *Muff v. Department of Commerce*, 117 M.S.P.R. 291 (2012), the appellant seems to suggest that the agency was not permitted to rely solely on a 2-week period to justify his removal.  *See* Petition for Review (PFR) File, Tab 6 at 5, 20-21.  We find this argument to be without merit because *Muff* does not announce an absolute rule requiring an agency to rely on a minimum period of performance in order to remove an employee.  To the contrary, as explained in *Muff*, the Board determines what constitutes substantial evidence of genuinely unacceptable performance in the context of an employee's annual performance plan on a case-by-case basis.  *Muff*, 117 M.S.P.R. 291, ¶ 8.

failing to provide him clear notice as to the basis for the proposed action, thereby depriving him of a meaningful opportunity to respond. *Id.*

¶11 After holding the requested hearing, the administrative judge issued an initial decision affirming the agency's removal action. IAF, Tab 45, Initial Decision (ID). She found that: (1) the agency's performance appraisal system was approved by the Office of Personnel Management; (2) the agency's performance standards were valid; (3) the agency clearly communicated its performance standards to the appellant and notified him that his performance was unacceptable in CE1; (4) the agency offered the appellant a reasonable opportunity to improve his performance, but he failed to do so; and (5) the agency proved by substantial evidence that the appellant's performance in CE1 was unacceptable. *See* ID. She also found that the appellant failed to prove his affirmative defenses[5] and that the agency did not violate his due process rights. *See* ID.

¶12 The appellant has filed a petition for review. PFR File, Tab 6. He argues that: (1) the agency failed to clearly communicate its performance standards, thereby depriving him of a reasonable opportunity to improve; (2) the agency failed to prove by substantial evidence that his performance in CE1 was unacceptable following the PIP; (3) the administrative judge erred in finding that he failed to prove his affirmative defenses of disability discrimination and reprisal; and (4) the administrative judge erred in finding that the agency did not violate his due process rights. *Id.* The agency filed a response in opposition and the appellant filed a reply. PFR File, Tabs 12, 14.

---

[5] We will not disturb the administrative judge's findings concerning the appellant's affirmative defenses of race and sex discrimination because the appellant does not challenge them on review. *See generally* PFR File, Tab 6.

<u>The agency clearly communicated its performance standards to the appellant and afforded him a reasonable opportunity to improve.</u>

¶13     The appellant asserts that the agency did not provide him a reasonable opportunity to improve because it:  (1) failed to hold many of the weekly meetings scheduled to discuss his progress; (2) "disparaged" him during the weekly meetings that did occur, rather than providing him with guidance on how to improve his performance; and (3) failed to clearly communicate its performance standards.[6]  PFR File, Tab 6 at 9-14, 17-20.

¶14     As to weekly progress meetings, there is no dispute that the appellant's first-level supervisor indicated in the PIP that she would meet with him weekly to discuss his performance but only met with him five times during the 90-day PIP period.  IAF, Tab 22 at 21, Tab 43 at 3, 6-10; *see* PFR File, Tab 14 at 9. However, the PIP explicitly directed the appellant to meet with his second-level supervisor if his first-level supervisor was not available.  IAF, Tab 22 at 21.  The appellant admits that he never contacted his second-level supervisor on the occasions when his first-level supervisor was unavailable for the weekly progress meetings.  IAF, Tab 36 at 60.  We find wholly unpersuasive the appellant's assertion that he did not know how to meet with his second-level supervisor because he was located in another part of the state, several hundred miles away. *See* PFR File, Tab 6 at 19.  If the appellant were truly uncertain as to how these meetings were to take place, he could have taken the simple step of contacting his

─────────────

[6] Regarding his performance standards, the appellant states that the agency:  (1) did not notify him as to whether he successfully completed the PIP until 2 months after the PIP period had ended; (2) confused him by rating his performance as successful in other critical elements which had requirements similar to CE1; (3) confused him by rating his performance as unacceptable in CE1, although he had received favorable ratings in CE1 in previous years; (4) issued a PIP completion letter that confused him because it indicated that he had passed the PIP but also stated that his performance had only improved to "a minimally acceptable level"; and (5) failed to counsel him about timely responding to e-mail communications, complying with deadlines, proofreading his work product, or any other performance deficiencies, prior to placing him on the PIP.  PFR File, Tab 6 at 12-14, 16.

second-level supervisor by telephone or e-mail to seek clarification. We also reject the appellant's purely speculative contention that any meetings with his second-level supervisor would not have been fruitful. *See id.*

¶15    The appellant states that during the progress meetings that did take place, his first-level supervisor was "disparaging," failed to make positive comments about his work, and instead used these meetings to "be negative" and "point[ ] out errors." *Id.* at 11-12. During his deposition, the appellant explained that he found the meetings "discouraging" because his supervisor "complained about everything [he] did" and always made comments such as "you missed doing this . . . I don't like this; you messed up this; you forgot to put the link here . . . you didn't correct the edits that I gave you." IAF, Tab 36 at 61-62. He believed that not every meeting should have been about his errors. *Id.* at 62. Although the appellant may have preferred to receive positive feedback about his work, it is unclear how the agency was to communicate performance deficiencies to him without identifying errors.

¶16    In any event, we find that the agency adequately informed the appellant of the performance standards for his position.[7] Based on the appellant's own description of what took place during progress meetings, it appears to us that his supervisor counseled him regarding his performance by pointing out areas in which he remained deficient. There are also numerous examples in the record of

---

[7] The appellant also asserts that the agency held him to a higher standard than his performance plan required. PFR File, Tab 6 at 13-14. We do not agree that requiring the appellant to timely respond to e-mails, meet deadlines, and proofread his work product constitutes an improper enlargement of his job duties. CE1 explicitly required the appellant to provide advice and technical services in a "timely" manner. IAF, Tab 22 at 9. Moreover, no counseling should have been necessary for the appellant, who was notably a supervisory employee, to understand that he needed to respond to communications from his supervisor and complete assignments in a timely manner without numerous errors. *Cf. Goodwin v. Department of the Air Force*, 75 M.S.P.R. 204, 207-08 (1997) (finding that, given the types of tasks the employee was required to complete during a PIP, training was not required and, to the extent counseling may have been necessary, it needed to occur in response to the work product submitted by the employee).

the agency's efforts to explain to the appellant his performance requirements and how his performance fell short of those standards. The appellant received a copy of his performance plan, which set forth the performance expectations for CE1, in February 2010. IAF, Tab 22 at 6, 9. On his performance appraisal and the associated PIP, the agency cited various assignments wherein the appellant's performance was deficient under CE1, indicating that he had failed to include requested changes in a document, failed to conduct thorough research and provide a clear response to an inquiry, and failed to timely complete assignments. *Id.* at 9, 18-20. During the PIP, the appellant's supervisor held a progress review meeting wherein she counseled the appellant to review his work for grammatical errors before turning in assignments. *See* IAF, Tab 11 at 54. She also informed him that his work on a project that involved revising a policy was incomplete because it did not include certain edits she had requested and contained other errors. *Id.* at 47. The PIP completion letter reiterated that the appellant must ensure his assignments were complete and fully responsive to management needs, accurate, and proofread for grammatical and typographical errors. IAF, Tab 22 at 24-26. During the period following the PIP, the appellant's supervisor notified him on several occasions of the importance of checking his e-mail and providing timely responses and again noted assignments that contained errors and were not fully responsive to management requests. *See, e.g.*, IAF, Tab 15 at 97-98, 103-04. We therefore discern no basis to conclude that the appellant did not receive a reasonable opportunity to improve his performance.[8]

The agency proved by substantial evidence that the appellant's performance in CE1 was unacceptable.

¶17     The appellant disputes the administrative judge's finding that the agency proved by substantial evidence that his performance was unacceptable, arguing that she failed to consider various extenuating circumstances. PFR File, Tab 6

---

[8] The appellant also asserts that the agency "bombarded" him with tasks that it knew his disability made it difficult for him to complete, but failed to provide him with a reasonable accommodation. PFR File, Tab 6 at 8. This argument is addressed below.

at 20-27. He suggests that, to the extent that he failed to timely respond to e-mails during the period at issue, this was because: (1) he did not have a desktop computer in his immediate office because he had recently moved offices; (2) agency management did not communicate any policy to him concerning responding to e-mails; (3) his supervisor failed to follow-up on important e-mails with a "more effective" form of communication; and (4) he was working on preparing for a complex retirement counseling session, which was time intensive. *Id.* at 22-25. However, there is no dispute that the appellant had access to a desktop computer in a conference room and also had an agency-issued Blackberry. *Id.* at 22; IAF, Tab 36 at 74-75. As previously stated, the appellant should not have required counseling or a written policy to understand the importance of timely reviewing and responding to e-mails. We also see no reason why his supervisor should have been required to personally seek him out to notify him of e-mails she had sent him. Further, the retirement counseling session to which the appellant refers took place on September 29, 2011, so this assignment does not explain why he failed to respond regarding the time-off award assignment until October 13, or why he failed to complete the majority of the organizational charts until October 12, even after the initial deadline of October 5, was extended to October 11.[9] *See* IAF, Tab 11 at 120.

¶18    The appellant takes issue with the agency's determination that his performance on specific assignments was deficient. He contends that his response to the time-off award assignment was adequate and that he could not

---

[9] The appellant asserts that he timely completed all assignments because he believes that initial deadlines are merely targets and that assignments are not truly due until the "hard deadline" when no further extensions are available. PFR File, Tab 6 at 25-26. This argument is not persuasive. We see no indication that the appellant's supervisor communicated to him that she did not actually expect to receive assignments from him by the deadlines she established. That the appellant's supervisor apparently attempted to work with him by extending deadlines he had missed without forewarning or explanation does not establish that he was justified in failing to timely complete assignments.

provide a clearer answer because the issue is open to interpretation. PFR File, Tab 6 at 26. He also argues that, although he was ultimately responsible for the APR forms that were found to contain errors, the errors were minor and were partially due to his supervisor's failure to provide him and his staff with information necessary to complete the forms sufficiently far in advance. *Id.* at 26-27. However, the agency is only required to prove by substantial evidence that the appellant's performance was deficient. *See Thomas v. Department of Defense*, 95 M.S.P.R. 123, ¶ 7 (2003), *aff'd*, 117 F. App'x 722 (Fed. Cir. 2004). Regardless of whether reasonable persons might disagree, we find that a reasonable person could conclude that his performance on these assignments was deficient. *See* 5 C.F.R. § 1201.56(c)(1). The appellant's subjective belief that his performance was adequate does not provide a basis for review.

¶19    The appellant also states that the administrative judge erroneously found that his performance deficiencies continued until December 8, 2011, which he argues constitutes a material error because the agency only relied upon performance deficiencies through October 13, 2011, in proposing his removal. PFR File, Tab 6 at 5, 20-22; *see* ID at 16. The agency concedes that it "did not rely upon any specific performance deficiencies in November and December 2011 to effect [the appellant's] removal." *See* PFR File, Tab 14 at 25. To the extent that an error occurred, we discern no harm because we find that the agency proved by substantial evidence that the appellant's performance in CE1 was unacceptable based upon the deficiencies identified in its proposal notice. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

The appellant failed to prove his affirmative defense of retaliation.

¶20    The appellant asserts that the administrative judge failed to properly analyze the evidence in the record establishing that the agency placed him on a

PIP and removed him in retaliation for his EEO activity,[10] including that agency management: (1) did not place him on a PIP until 4 months after the last alleged performance deficiency forming the basis for the PIP, which violated its own policy and agency managers' stated beliefs regarding the appropriate manner of addressing performance deficiencies;[11] (2) had not counseled him on any of the alleged deficiencies prior to placing him on the PIP; (3) placed him on the PIP just 1 week after learning of his EEO activity; (4) removed him from the EARS team 2 days after he amended his EEO complaint to include his 2010 performance appraisal and the PIP; and (5) proposed his removal approximately 5 months after he filed his formal EEO complaint and 2 months after he requested a reasonable accommodation. PFR File, Tab 6 at 6-7, 32-34. He also states that he has a history of good performance and numerous professional achievements. *Id.* at 34.

¶21　　　The administrative judge indicated in the initial decision that she was not convinced, based on her observation of the behavior and demeanor of witnesses who testified at the hearing, that retaliation was the reason for the agency's removal action. ID at 33-34. We must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing. *Haebe v.*

---

[10] The appellant initiated EEO contact on April 11, 2011, and amended his informal complaint on April 25, 2011, to include his 2010 performance appraisal and the PIP, and on April 27, 2011, to include his removal from an Evaluation and Review Staff (EARS) team. IAF, Tab 8 at 254, 262-64. He filed a formal EEO complaint on July 21, 2011, and made additional amendments on August 24, September 25, and October 13. *Id.* at 47-51, 174, 176, 178. He filed a reasonable accommodation request on October 9, 2011. IAF, Tab 13 at 114.

[11] The appellant also asserts that this delay violated 5 C.F.R. § 432.104. PFR File, Tab 6 at 14-16. To the extent that he is attempting to raise an affirmative defense of harmful procedural error, we decline to consider it because he has provided no explanation for his failure to raise such a claim below. *See Arndt v. Department of Transportation*, 16 M.S.P.R. 221, 225 (1983) (the Board will not review claims of affirmative defenses raised for the first time on review, where they are not supported by any new evidence which was unavailable before the record closed below); *see also* IAF, Tab 37 at 5-6, Tab 40 at 1-3.

*Department of Justice*, [288 F.3d 1288](), 1301 (Fed. Cir. 2002).  We may overturn such determinations only when there are "sufficiently sound" reasons for doing so.  *Id.*  We discern no basis to disturb the administrative judge's findings in this instance.

¶22    The record contains contemporaneous written communications between members of agency management indicating that, in January 2011, the agency determined that the appellant's performance in CE1 was unacceptable and thus began preparing the PIP.  IAF, Tab 16 at 21, 23-27.  The agency apparently planned to issue the PIP in late March 2011.  *Id.* at 65-68.  However, the appellant was then out of the workplace for medical reasons for approximately 1 month, beginning on March 21, 2011.  *Id.* at 72, 83-84, 133.  The appellant did not initiate EEO contact until April 11, 2011, and agency management did not learn of it until April 18, 2011.  IAF, Tab 8 at 254, 270, 273, Tab 15 at 199.  Based on the foregoing, we agree with the administrative judge that the agency had already identified the appellant's performance issues and devised a plan to address them before he engaged in protected EEO activity, thus negating any inference of a retaliatory motive as to the implementation of the PIP.  *See* ID at 33-34.

¶23    The appellant appears to suggest that his removal from the EARS team, and his subsequent removal from the agency, are indicative, because of "suspicious timing," of a pattern of retaliation stemming from his EEO activity.  *See* PFR File, Tab 6 at 33.  However, temporal proximity alone is not sufficient to establish, by preponderant evidence, that the agency's articulated reasons for its action are a pretext for retaliation.  *Betz v. Department of Justice*, EEOC App. No. 0120073557, 2009 WL 363135, at *8 (Jan. 30, 2009).[12]  The appellant offers no evidence to dispute the agency's assertion that it removed him from the EARS

---

[12] The Board generally defers to decisions of the U.S. Equal Employment Opportunity Commission concerning issues of substantive discrimination law.  *See Southerland v. Department of Defense*, [119 M.S.P.R. 566](), ¶ 20 (2013).

team because, given that the team is tasked with evaluating district operations, it was not appropriate to retain him on the team while he was working under a PIP to raise his performance to an acceptable level. *See* IAF, Tab 8 at 75, 264, Tab 10 at 25-27. Notably, in September 2011, agency management again authorized him to participate as an EARS evaluator following his successful completion of the PIP. IAF, Tab 17 at 19; *see* IAF, Tab 10 at 27-28. Moreover, as previously stated, we find that the appellant has not offered any evidence or argument that would cause us to disturb the administrative judge's finding that the agency proved by substantial evidence that it removed the apellant from his position because of his continued unacceptable performance in CE1 following the PIP.

The appellant failed to prove his affirmative defense of disability discrimination.

¶24    The appellant suffers from the eye condition esotropia, which he asserts affects his ability to read small font and causes him to experience eye fatigue and double vision after reading for prolonged periods, thereby "imped[ing] his ability to complete tasks that involve substantial reading."[13]  PFR File, Tab 6 at 8, 28;

---

[13] The administrative judge found that the appellant is an individual with a disability because of his esotropia. ID at 28. We question this finding. In late-October and early-November 2011, the appellant's ophthalmologist indicated that his initial treatment would be an adjusted eyeglass/contact lens prescription, with use of "over-the-counter reading glasses for near work" and that they would reassess his condition after 2 months to determine whether surgery would be necessary. IAF, Tab 13 at 124, 126-27. The agency proposed the appellant's removal before this 2-month trial period ended. To the extent that his esotropia could have been corrected with eyeglasses or contact lenses, it would not constitute a disability. *See* 29 C.F.R. § 1630.2(j)(1)(vi) (the ameliorative effects of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity). Moreover, it is unclear whether the appellant is substantially limited in the major life activity of seeing simply because he is "limited in his ability to read for prolonged periods, especially small print" and experiences double vision when looking at a computer screen, which "correct[s] itself after [he is] able to close [his] eyes for an hour or more." *See* IAF, Tab 13 at 115-16, 127. We need not decide these issues, however, because even assuming arguendo that the appellant was entitled to an accommodation which the agency failed to provide, he has not shown that his performance deficiencies and removal have any connection to the agency's alleged failure to accommodate his disability.

IAF, Tab 1 at 19-20, Tab 13 at 124, 126-27.  He contends that the tasks which the agency assigned him, and upon which it relied to find his performance unacceptable following the PIP period, required "heavy proofreading," which he could not complete successfully because the agency failed to provide him with magnification equipment and software as an accommodation for his disability.  PFR File, Tab 6 at 8, 27-32.  We disagree.  We discern no basis to conclude that any difficulties the appellant may have had with his vision are responsible for his repeated failure to timely open e-mails and comply with deadlines, his failure to conduct thorough research and provide clear advice on technical questions, or his failure to correctly relay instructions when delegating assignments.

<u>The agency did not violate the appellant's due process rights.</u>

¶25    The appellant alleges that the agency violated his due process rights because the deciding official stated, regarding his failure to timely complete e-mailed assignments, that the record evidence implied that he "ignored [his] supervisor's emails until she forced [him] to recognize that she was directing [him] to provide her with certain advisory services."  PFR File, Tab 6 at 34-35; IAF, Tab 21 at 138.  According to the appellant, these statements constituted "material allegations that differed from the proposal letter" because the proposal notice did not characterize his actions as willful.  PFR File, Tab 6 at 34-35.  He therefore argues that he did not have a fair opportunity to respond to the charges against him.  *Id.*

¶26    When proposing an action under chapter 43, an agency's proposal notice must identify the "specific instances of unacceptable performance by the employee on which the proposed action is based" and the critical elements involved in each instance of unacceptable performance.  5 U.S.C. § 4303(b)(1).  The agency afforded the appellant all of the process he was due; it notified him of the specific instances of unacceptable performance upon which the proposed action was based, explained that all of the instances related to his performance in

CE1, afforded him over 2 weeks to submit a reply, and considered his reply when reaching its decision. *See* IAF, Tab 21 at 135-39, 141-54, 156-65. While the appellant objects to the deciding official's alleged characterization of the instances of unacceptable performance included in the proposal notice as willful, he does not argue that the deciding official relied upon instances of unacceptable performance not included in the proposal notice. We thus discern no basis to conclude that the agency violated the appellant's due process rights.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no

later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.